IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PRIMERICA LIFE INSURANCE COMPANY, | § § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No. 3:16-CV-0455-D |
| VS. | § § | |
| SHERRY PURSELLEY, et al., | § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this interpleader action brought by plaintiff Primerica Life Insurance Company ("Primerica") to determine ownership of life insurance proceeds, codefendants Henslee Purselley and Lee Purselley (collectively, the "Children") and Sherry Purselley ("Sherry") cross-move for summary judgment on all claims. For the reasons explained, the court grants Sherry's motion, denies the Children's motion, awards Sherry the interpleaded funds plus accrued interest, and dismisses the balance of this action by judgment filed today.

I

This interpleader action involves a dispute over a Primerica life insurance policy ("the Policy") that insured the life of decedent Lee R. Purselley, Jr. ("Lee"), who died in 2015. In 1989 Lee purchased the Policy, which provided coverage of $300,000. The Policy named Lee the owner, his then-wife Sherry the primary beneficiary, and the children of the marriage contingent beneficiaries. In August 1992 Lee executed a Multi-Purpose Change Form ("Change Form") that designated Sherry the Policy owner. The Change Form transferred

"ownership of said Policy, along with all right, title, and interest in said Policy to Sherry Keeton Purselley[.]" Jt. App. 40.[1]  The name "Sherry Keeton Purselley" is handwritten in the blank on the form for the "Name of New Owner." *Id.*

Less than one year later, in May 1993, Sherry and Lee divorced.  A state court entered a divorce decree, agreed to by both parties, that allocated to Lee "any and all policies of life insurance in his name," and to Sherry "any and all policies of life insurance in her name." Jt. App. 248.  Sherry continued to pay the Policy's monthly premiums until Lee's death in September 2015.  After his death, she filed a claim under the Policy as owner and primary beneficiary.  When Primerica processed the claim, it learned for the first time that Sherry and Lee had divorced.  Primerica notified the Children of their status as contingency beneficiaries.  After being notified, the Children then informed Primerica that they also intended to file a claim for Policy proceeds.  Primerica then filed the instant interpleader action against, *inter alia*, Sherry and the Children.  The court concluded that the interpleader action was proper, and it dismissed Primerica from the lawsuit.  Sherry and the Children now cross-move for summary judgment, agreeing that only questions of law remain to be decided.[2]

---

[1]The parties in briefing the cross-motions submitted a joint appendix, to which the court will refer by the abbreviation "Jt. App."

[2]In a January 25, 2017 order, the court granted the parties' agreed motion concerning summary judgment briefing, noting that Primerica had been dismissed from the case, that defendant John Purselley had expressly waived and disclaimed any claim to the disputed proceeds and had been dismissed from the case, and that defendant Susie Thompson could, but was not required to, participate in the agreed summary judgment briefing process.

II

The court "has broad powers in an interpleader action." *Rhodes v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999). Interpleader actions are decided through two stages.

> First, the court determines whether the requirements for an interpleader action have been met by deciding if there is a single fund at issue and whether there are adverse claimants to that fund. Second, if the court determines that the requirements for interpleader are met, the court determines the rights of the claimants.

*Jackson Nat'l Life Ins. Co. v. Dobbins*, 2016 WL 4268770, at *2 (N.D. Tex. Aug. 15, 2016) (Fitzwater, J.) (citing *Rhodes*, 196 F.3d at 600). Absent special circumstances, this second stage "will proceed like any other action." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1714, at 628 (3d ed. 2001). Accordingly, if there is no genuine issue of material fact that requires proceeding to trial, the second stage may be adjudicated through summary judgment. *Rhodes*, 196 F.3d at 600. Because the court has already determined that interpleader is proper, it begins its analysis at the second stage.

A movant's summary judgment burden depends on whether the motion for relief is on a claim for which the movant will have the burden of proof at trial. In an interpleader action, each claimant must prove his or her right to the fund by a preponderance of evidence. *Id.* To be entitled to summary judgment on a claim for which the movant will have the burden of proof, the moving party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex. N.A. v. Prudential Co. Of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d

1190, 1194 (5th Cir. 1986)).  This means that the moving party must demonstrate that there are no genuine and material fact disputes and that the moving party is entitled to summary judgment as a matter of law.  *See Martin v. Alamo Cmy. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marin Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

Sherry contends that she is the sole owner and primary beneficiary of the Policy after the 1992 transfer of ownership.[3]  She maintains that her ownership survived the divorce, and that she is therefore entitled to all Policy proceeds.  The Children maintain that ownership of the Policy never transferred from Lee to Sherry under Texas community property law; that the divorce decree's assignment of "all policies of life insurance in [Lee's] name" made him the sole owner of the Policy; and that because Texas law presumes a divorced spouse should not collect life insurance proceeds absent evidence of a contrary intention, the proceeds rightfully belong to the Children as contingent beneficiaries.

---

[3]The Children contend that Sherry did not properly plead this theory and thus cannot raise it at summary judgment.  They point to her initial answer, which they contends contains no mention of her ownership of the Policy.  The court disagrees.  Sherry admits in her answer to Primerica's complaint the allegation that Lee transferred ownership to her in 1992.  Sherry Answer ¶ 10.

A

In Texas, property acquired during marriage is generally considered to be community property of the marriage. *See* Tex. Const. Art. XVI, § 15. Community property remains the joint property of both spouses during the marriage, and upon one spouse's death, the surviving spouse receives outright ownership of her one-half of the community estate. *See Estate of Merkel v. United States*, 2008 WL 3152986, at *3 (N.D. Tex. July 29, 2008) (Fitzwater, C.J.) (citing *United States v. Stapf*, 375 U.S. 118, 128 (1963)), *vacated and dism'd on other grounds sub nom. Merkel v. Pollard*, 354 Fed. Appx. 88 (5th Cir. 2009). The remaining one-half interest goes to the decedent's estate. *Id.* If a spouse acquires property by gift, however, the property is the spouse's separate property. Tex. Const. Art. XVI, § 15.

B

The court addresses first the question whether Lee gifted his ownership of the Policy to Sherry in 1992. If so, the Policy became Sherry's separate property.

1

Under Texas law, one spouse may gift all of his interest in community property to the other spouse. *Parkhurst v. Weitinger & Tucker*, 850 S.W.2d 726, 730 (Tex. App. 1993, writ denied). To establish that a gift was made, a party must prove (1) delivery, (2) acceptance, (3) and intent to make the gift. *Kiel v. Brinkman*, 668 S.W.2d 926, 929 (Tex. App. 1984, no writ). To establish intent, a person must "perform an affirmative act which would clearly reflect an intention to make a gift of [the] community share." *Freedman v. United States*,

382 F.2d 742, 747 (5th Cir. 1967). Such intent may be evidenced by "a clause expressly purporting to transfer [the] community interest to [the spouse's] separate estate[.]" *Id.* The party asserting that a gift has been made bears the burden of proof. *Powell v. Powell*, 822 S.W.2d 181, 183 (Tex. App. 1991, writ denied). The party must overcome the presumption of community property and "create a contrary presumption of separate property." *Gaides v. Gaides*, 2001 WL 460049, at *9 (Tex. App. May 3, 2001, pet. denied) (not designated for publication).

2

Only the final element of the tripartite test—intent—is at issue here. Sherry contends that the Change Form shows Lee's intent to transfer all of his interest in the Policy to Sherry's separate estate. The form states that Lee is "transfer[ring] ownership of said Policy, along with all right, title and interest in said Policy to Sherry Keeton Purselley[.]" Jt. App. 40.

Two cases are instructive to the court's decision. In *Gaides* the court held that a husband's signing a policy application that named his wife the sole owner of the policy, when using funds from the couple's joint account, was insufficient to indicate an intent to make a gift. *Gaides,* 2001 WL 460049, at *9.

In *Parson v. United States*, 460 F.2d 228 (5th Cir. 1972), however, the Fifth Circuit affirmed the district court's decision holding that a spouse's execution of a third party ownership statement as part of an application for accidental death benefits operated as an effective assignment or gift of his community interest in the policy. *Id.* at 232. The

stipulated facts showed that, in executing the third party ownership option, the spouse applying for accidental death benefits expressly stated "that all right and title to the insurance applied for shall vest in and every incident of ownership thereof may be exercised and enjoyed irrevocably without the consent of any other person by: Name of Owner [the name of the applicant's wife was inserted as owner]." *Id.* at 230. In distinguishing a case on which the government relied, the panel held that "here [the applicant] was forced to make a conscious decision between irrevocably assigning all rights, title and every incident of ownership to [his wife], or expressly retaining ownership and naming a beneficiary. He chose the former and [his wife] received the proceeds as third party owner." *Id.* at 231. The panel, in rejecting another of the government's arguments noted, that it had held in a prior case that "[a] husband may unconditionally make his wife the owner and beneficiary of an insurance policy on his life when it is issued, or later if he desires, so as to bar inclusion of it in his estate." *Id.* at 232 (brackets in original; emphasis omitted) (quoting *Prichard v. United States*, 397 F.2d 60, 64 (5th Cir. 1968)). The panel affirmed the district court, concluding that it did not clearly err in holding that the applicant's intent was clear, and that, in executing the application and naming his wife as the third-party owner, the applicant "had performed the 'affirmative act' which irrevocably transferred every incident of ownership to [the applicant's wife] and effectuated a gift of his community interest to her." *Id.*

Lee's intent is at least as clear as that deemed sufficient in *Parson*. The language in the Change Form—transferring all "right, title and interest"—is similar to that in *Parson*—vesting "all right and title . . . and every incident of ownership thereof may be

exercised and enjoyed irrevocably without the consent of any other person." Moreover, this language was not included in an initial application; it was necessary for Lee to affirmatively transfer his ownership of the Policy to Sherry, "along with all right, title and interest in said Policy." Jt. App. 40. This affirmative post-application documentation—like a deed in a transfer of real property—bolsters the conclusion that Lee intended to transfer to Sherry all of his ownership interest in the Policy. Accordingly, the court concludes that Sherry has established beyond peradventure that Lee gifted to her all of his interest in the Policy when he executed the Change Form. And because under Texas law a gift became Sherry's separate property, the Policy became part of her separate estate and was no longer the community property of Lee and Sherry.

C

Having concluded that Sherry has established that her ownership interest in the Policy became a part of her separate estate after Lee executed the Change Form, the court must next decide whether Sherry has established beyond peradventure that the divorce decree did not affect her separate property ownership of the Policy.

1

Under the Texas Constitution, a court in a divorce proceeding "has no authority to divest a spouse's interest in separate property, even [if] the interest is small." *Powell*, 822 S.W.2d at 183. When a court does transfer one spouse's interest in separate property to the other spouse, the decree is considered void. *See Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009). If a divorce decree is ambiguous and subject to more than one reasonable

interpretation, "courts should adopt the construction that correctly applies the law." *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003).

2

Sherry and the Children disagree about whether the divorce decree reallocated Sherry's ownership interest. As noted, the decree simply states that any life insurance policies a spouse's name are to be awarded to that spouse. The decree does not indicate the specific policies or the owner of the policies. Nor does the decree explicitly limit itself only to community property policies. Regardless, if this court were to conclude that the divorce decree did transfer Sherry's separate property interest in the Policy to Lee, the decree would be void on the ground that it impermissibly divested her interest in separate property. *See Powell*, 822 S.W.2d at 183. To avoid this incorrect application of Texas law, the court therefore concludes that the divorce decree does not intend to apply to Lee's and Sherry's respective separate property, including Sherry's ownership interest in the Policy. *See Shanks*, 110 S.W.3d at 447. Because under this construction of the divorce decree Sherry retained her ownership interest in the Policy, and has maintained her ownership since, the court holds that Sherry has established beyond peradventure that she is entitled to the Policy proceeds as the Policy owner and primary beneficiary.

IV

The court now turns to the Children's assertion that, regardless of Sherry's ownership interest in the Policy, the Texas Family Code prohibits Sherry from being the Policy's primary beneficiary.

A

Section 9.301(a) of the Texas Family Code provides that "[i]f a decree of divorce or annulment is rendered after an insured has designated the insured's spouse as a beneficiary under a life insurance policy in force at the time of rendition," then the provision in the policy in favor of the former spouse is ineffective. Tex. Fam. Code Ann. § 9.301(a) (West 2006). The statute provides three exceptions to this general rule: when the divorce decree designates the insured's former spouse as the beneficiary; when the insured redesignates the former spouse as the beneficiary after rendition of the decree; and when the former spouse is designated to receive the proceeds in trust for the benefit of a child or dependent. *Id.* § 9.301(a)(1)-(3).

B

The parties disagree about how the ownership of the Policy affects the application of § 9.301(a). The Children contend that ownership of the Policy at the time of divorce is irrelevant, and that so long as the insured designates the former spouse as the beneficiary before the divorce decree is entered, the general rule of § 9.301(a) controls. Sherry counters that the insured's ownership of the policy at the time of divorce is a prerequisite to the application of § 9.301(a).

The court holds under the plain language of § 9.301(a) and the relevant case law that § 9.301(a) does not apply here. The language of § 9.301(a) assumes that an insured has designated the insured's spouse as a beneficiary under a life insurance policy, *see* Tex. Fam. Code Ann. § 9.301(a) ("after an insured has designated the insured's spouse"), not, as here,

that the insured has gifted ownership of the policy to the other spouse. One of the statutory exceptions likewise assumes that the insured spouse has retained ownership of the policy when redesignating a former spouse as beneficiary. *See id.* § 9.301(a)(2) ("the insured redesignates the former spouse[.]"). Thus in reported cases the statute has been applied only to situations in which the insured retains some ownership of the policy and therefore has the authority to designate the beneficiary. This commonly occurs when the policy is community property at the time of divorce, or when the insured spouse is awarded the policy in the divorce decree. *See e.g., Provident Life & Acc. Ins. Co. v. Cleveland*, 460 Fed. Appx. 359, 360-61 (5th Cir. 2012) (per curiam) (applying § 9.301(a) to policy that was purchased by insured and owned by insured at time of divorce); *Branch v, Monumental Life Ins. Co.*, 422 S.W.3d 919, 923-25 (Tex. App. 2014, no pet.) (applying § 9.301(a) when divorce decree awarded policy to insured husband); *Camacho v. Montes*, 2006 WL 2660744, at *1 (Tex. App. Sept. 15, 2006, no pet.) (mem. op.) (same).

Moreover, this comports with the court's foregoing analysis of community property and separate property. As stated above, the Family Code does not provide the authority to alter the separate property rights of two spouses. *See Powell*, 822 S.W.2d at 183. It provides only for the division of "the estate of the parties," also referred to as community property. Tex. Fam. Code Ann. § 7.001 (West 2006); *see also Eggemeyer v. Eggemeyer*, 554 S.W. 2d 137, 139 (Tex. 1977) (interpreting § 7.001's predecessor statute). To hold that § 9.301(a) allows a Texas court to interfere with separate property rights—in which the insured has no

interest— runs counter to Texas law.[4]

Here, Lee transferred ownership of the Policy to Sherry prior to their divorce by executing the Change Form. Because this constituted a gift, the Policy became Sherry's separate property. At that point, Lee had no authority under the Policy to designate its beneficiaries. *See* Jt. App. 7 (providing that policy owner has "all of the rights described in this policy," and that insured only obtains such rights if owner dies without naming a contingent beneficiary). The authority to designate primary and contingent beneficiaries fell to Sherry as owner of the Policy. *Id.* Because the Policy remained Sherry's separate property, § 9.301(a) did not divest Sherry of her status as primary beneficiary when she and Lee divorced.

\* \* \*

For the foregoing reasons, the court grants Sherry's motion for summary judgment and denies the Children's motion for summary judgment. The claims of all defendants except Sherry are dismissed with prejudice. The court awards Sherry the interpleaded funds

---

[4]Indeed, § 9.301(a) has an obvious purpose that is wholly consistent with Texas community property law. It is a catch-all provision that eliminates the problem of beneficiary designations that are made before divorce or annulment and are left unresolved by a decree of divorce or annulment. Section 9.301(a) sensibly provides that, if an insured designates his spouse as a beneficiary under a life insurance policy before a decree of divorce or annulment is rendered, and the life insurance policy is still in force at the time the decree is rendered, the provision in the policy in favor of the former spouse is ineffective unless an exception applies. The exceptions are: when the divorce decree designates the insured's former spouse as the beneficiary; when the insured redesignates the former spouse as the beneficiary after rendition of the decree; or when the former spouse is designated to receive the proceeds in trust for the benefit of a child or dependent.

plus accrued interest, and it dismisses this action by judgment entered today.

**SO ORDERED**.

August 31, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE